UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

RUSTEM NURLYBAYEV, Individually and
On Behalf of All Others Similarly Situated,

        Plaintiffs,

    -v-                                   No.  17 CV 6130-LTS-SN

ZTO EXPRESS (CAYMAN) INC., et al.,

        Defendants.

-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

        Lead Plaintiffs Wong Family Trusts and Dongna Fang ("Plaintiffs"), bring this

putative class action against Defendant ZTO Express (Cayman) Inc. ("ZTO"), its executive

officers and directors (the "Individual Defendants"),[1] and its underwriters (the "Underwriter

Defendants," together with ZTO, "Defendants"), alleging that the registration statement and

prospectus filed in connection with ZTO's initial public offering of American Depository Shares

(the "Offering Documents") omitted material information in violation of Sections 11, 12(a)(2),

and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77l(a), 77o.  Plaintiffs move (docket

entry no. 89), pursuant to Federal Rule of Civil Procedure 15(a)(2), for leave to file a Second

Amended Class Action Complaint (docket entry no. 91-1, the "SAC"), amending their Amended

Class Action Complaint (docket entry no. 52, the "AC"), which the Court dismissed for failure to

state a claim on July 17, 2019.  Nurlybayev v. ZTO Express (Cayman) Inc., No. 17-CV-6130

(LTS) (SN), 2019 WL 3219451 (S.D.N.Y. July 17, 2019) (docket entry no. 86, the "July 17

---

[1]     The Individual Defendants have not yet appeared in this action.  ZTO and the
Underwriter Defendants represent that the Individual Defendants have not yet been
served.  (See docket entry no. 92 at 1 n.1; see also docket entry no. 78.)

Opinion").  The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C.

§ 77v.  The Court has considered thoroughly the arguments and submissions of the parties.  For

the reasons that follow, Plaintiffs' motion for leave to amend is denied.

<h3 style="text-align:center">BACKGROUND</h3>

The Court assumes the parties' familiarity with the background of this case,

which is set forth in the July 17 Opinion.  That Opinion provided, in relevant part:

> Defendant ZTO is an express delivery company headquartered in
> Shanghai, China.  (AC ¶ 4.)  ZTO operates through a network partner
> model in which independent network partner outlets, operating under the
> ZTO brand, pick up parcels from senders and deliver those parcels to a
> regional hub owned and operated by ZTO.  (AC ¶ 43.)  ZTO then sorts the
> parcels and transports them to the regional hub closest to the end recipient.
> (Id.)  From there, another network partner outlet is responsible for last-
> mile delivery.  (Id.)  ZTO's network partners are paid a delivery service
> fee by parcel senders and, in turn, the pickup outlet pays ZTO a "network
> transit fee" for its sorting and transportation services.  (AC ¶ 44.)
>
> On October 27, 2016, ZTO made an initial public offering ("IPO") of
> 72,100,000 American Depository Shares on the New York Stock
> Exchange at $19.50 per share, generating approximately $1.36 billion.
> (AC ¶¶ 5, 46.)  In connection with its IPO, ZTO filed the Offering
> Documents with the Securities and Exchange Commission ("SEC").  (AC
> ¶ 46; see also docket entry no. 62, Musoff Decl. Ex. B ("Prospectus"), Ex.
> C ("Reg. Stmt.").)  The SEC declared the Offering Documents effective
> on October 26, 2016.  (AC ¶ 46.)

(July 17 Opinion at 2.)[2]

Plaintiffs' AC cited a number of statements in the Offering Documents, including,

as still relevant on this motion: (1) ZTO's report of its 2014, 2015, and 2016 revenues, operating

profits, and operating profit margins (AC ¶¶ 45-50, 55, 57; SAC ¶¶ 44-45), (2) ZTO's statement

that its network transit fees were its principal source of revenue (AC ¶ 56; SAC ¶ 65), and (3)

---

[2]     Defendants also attach excerpts of the Registration Statement as Exhibit 1 to the
Declaration of Scott D. Musoff dated October 25, 2019 (docket entry no. 93).

ZTO's statement, in the "Risk Factors" section of its Registration Statement, that there had "historically been declines in the delivery service fees charged by our network partners" and that if ZTO were "not able not effectively control our cost and adjust the level of network transit fees based on operating costs and marketing conditions," ZTO's "profitability and cash flow may be adversely affected."  (AC ¶ 60; SAC ¶ 68.)  Plaintiffs contend that these statements omitted material factual information necessary to render the statements not misleading—including, as relevant here, that ZTO had lowered its network transit fees in April 2016, six months before its IPO (AC ¶¶ 7, 51, 73; SAC ¶¶ 46-49)—and that ZTO was also required to disclose that omitted information pursuant to Items 303 and 503 of Regulation S-K, 17 C.F.R. § 229.303 ("Item 303"), § 229.503 ("Item 503").  As explained in the July 17 Opinion, Plaintiffs allege that the April 2016 network transit fee decrease was not made public until May 17, 2017, during an earnings call with investors and analysts, when ZTO's Chief Executive Officer Lai stated in response to a question about the decline in ZTO's gross profit margin in the first quarter of 2017:

> I would like to point out that the gross margin in Q1 this year and last year are not directly comparable.  The reason is that during the second quarter of last year, we lowered the network transit fees we charge our network partners, and the change in the pricing has led to a reduction in the transit fee revenue per package.  So because of this change, the quarterly revenue generated during the second quarter of last year is not comparable with that in the previous periods.  And such pricing policy was changed in April last year.  So the apple-to-apple comparisons will begin during the second quarter of this year.

(AC ¶ 73; SAC ¶¶ 87-90.)  Plaintiffs allege that ZTO's share price decreased following this disclosure, and that Plaintiffs, as purchasers of ZTO American Depository Shares pursuant or traceable to the Offering Documents, sustained damages as a result.  (AC ¶¶ 19-20, 77-78; SAC ¶¶ 14-15, 98, 103(d).)

In the July 17 Opinion, the Court held that the omission of reference to ZTO's April 2016 network transit fee decrease from the Offering Documents did not render any of the statements challenged by Plaintiffs materially misleading.[3]  First, Plaintiffs failed to allege that ZTO reported anything other than accurate historical financial data, and, "[t]o the extent that Plaintiffs contend the April 2016 fee decrease had an undisclosed material negative effect on ZTO's profitability, that argument is unsupported by the AC, which contains no allegations from which the Court can discern the magnitude of the fee decrease or its effect on ZTO's profitability."  (July 17 Opinion at 9-10.)  Second, Plaintiffs alleged "no facts from which the Court can infer that the fee decrease had any effect, let alone a material effect, on the composition of ZTO's revenues such that network transit fees were no longer the 'principal' source of ZTO's revenues after April 2016."  (Id. at 8.)  Third, the Court found that Plaintiffs had failed to allege plausibly that ZTO's risk disclosure statements were materially misleading, because Plaintiffs "failed to allege facts sufficient to support a plausible inference that omission of the April 2016 fee decrease was material," and "to the extent that Plaintiffs argue that the April 2016 fee decrease was indicative of undisclosed downward pricing pressure that existed prior to October 2016, multiple disclosures in the Offering Documents warned investors of that pressure and the need to adjust network transit fees in response."  (Id. at 10-11.)  The Court also dismissed Plaintiffs' claims under Items 303 and 503 of Regulation S-K, and Section 12 and Section 15, for largely the same reasons.  (Id. at 13-16.)

---

[3]     The July 17 Opinion set forth the relevant standards of law under Sections 11, 12, and 15 of the Securities Act, including the standards that courts apply to determine materiality. (July 17 Opinion at 7-8.)  The Court adopts those recitations of standards of law by reference.

Through their motion to file the SAC, Plaintiffs seek to cure these deficiencies by asserting two additional sets of allegations.  First, Plaintiffs seek to bolster their pleading with "new allegations substantiating the reduced network transit fees' effect and materiality on ZTO's financial results."  (docket entry no. 90 ("Plaintiffs' Memo.") at 3, 9-13; <u>see</u> <u>also</u> SAC ¶¶ 8, 40, 46-54, 68-69, 73-75, 80-97, 100-01, 103.)  Second, Plaintiffs seek to advance a new theory for why ZTO's financial disclosures were misleading, by alleging that "ZTO made millions in pre-IPO, 1H16 payments to [a related] party, the trucking company Tonglu Tongze Logistics Ltd." ("Tonglu"), through immediately vesting shares "in lieu of normal cash-based payments," thereby allowing ZTO to "report lower expenses, and therefore higher profits and margins," immediately prior to ZTO's October 2016 IPO.  (Plaintiffs' Memo. at 3, 7-8, 13-14; <u>see</u> <u>also</u> SAC ¶¶ 6-7, 43, 55-67, 70-72, 102.)

Defendants oppose Plaintiffs' proposed amendments, on the grounds that (1) Plaintiffs' claims arising out of ZTO's alleged payments to Tonglu are barred by the applicable statute of limitations, and, in any event, fail to state a plausible claim for relief (docket entry no. 92 ("Defendants' Memo.") at 4-16), and (2) Plaintiffs' new allegations concerning ZTO's omission of its April 2016 network transit fee decrease fail to cure the defects identified in the July 17 Opinion.  (<u>Id.</u> at 16-25.)  For the reasons set forth below, the Court agrees.

<u>DISCUSSION</u>

Federal Rule of Civil Procedure 15(a) provides that leave to amend the pleadings "should [be] freely give[n] when justice so requires."  Fed. R. Civ. P. 15(a).  Leave to amend may, however, be denied if the amendment (1) has been delayed unduly, (2) is sought for dilatory purposes or is made in bad faith, (3) would unduly prejudice the opposing party, or (4) would be futile.  <u>Kim v. Kimm</u>, 884 F.3d 98, 105 (2d Cir. 2018).  A proposed amendment to a

pleading would be futile if it could not withstand a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Ballard v. Parkstone Energy, LLC, No. 06-CV-13099 (RWS), 2008 WL 4298572, at *3 (S.D.N.Y. Sept. 19, 2008).

Under the Rule 12(b)(6) standard, the Court accepts as true the non-conclusory factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007).  To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007).  However, a "pleading that offers labels and conclusions or a formulaic recitation of elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).  To state a claim upon which relief can be granted, the pleading's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

Claims Based on ZTO's Alleged "Off-the-books" Payments to Tonglu

In the SAC, Plaintiffs allege, "for the first time" (Plaintiffs' Memo. at 4), that Defendants violated Sections 11, 12, and 15 of the Securities Act by failing to disclose, in ZTO's Offering Documents, unusual "share-based" payments to non-party Tonglu in the first half of 2016.  Plaintiffs summarize their allegations as follows:

> The [SAC] alleges that ZTO used off-the-books share-based payments that enabled the presentation of more robust earnings and margins than would have been presented to investors using standard accounting.  ¶¶ 46, 55-64. These share-based payments to one of ZTO's trucking vendors, Tonglu, were a departure from the standard practice of making cash-based payments to Tonglu.  ¶ 55, 57, 59-60.  Unusually, the share-based payments vested immediately.  ¶¶ 55, 58-61.  And, because Tonglu was substantially owned by ZTO insiders, ZTO did not need to seek approval for the change in the manner of payment.  ¶ 56.  The payments had the effect of moving payments that would normally be booked as cash expenses off of ZTO's books, thereby decreasing expenses, inflating earnings, and inflating margins.  ¶¶ 55, 58, 60, 64.

(Plaintiffs' Memo. at 8.)[4]

As an initial matter, and as Defendants correctly argue (Defendants' Memo. at 4-9), Plaintiffs' Tonglu-based claims are barred by the applicable statute of limitations.  15 U.S.C. section 77m provides that "[n]o action shall be maintained to enforce any liability created under section 77k or 77l(a)(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence[.]"  15 U.S.C.A. § 77m (Westlaw through P.L. 116-259).  In this case, there is no dispute that more than one year elapsed between the publication of the information on which Plaintiffs rely to assert their Tonglu-based claims and Plaintiffs' motion for leave to amend to assert those claims.  (See Defendants' Memo. at 4-7; docket entry no. 96 ("Plaintiffs' Reply Memo.") at 2-5; see also SAC ¶ 102.)  The only question for the Court is whether those claims relate back to those asserted in Plaintiffs' prior pleadings.

"An amendment to a pleading relates back to the date of the original pleading when: . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  New claims may arise out of the same conduct, transaction, or occurrence where they "amplify[y], or state[ ] in a slightly different way," the claim of the original pleading, Slayton v. Am. Exp. Co., 460 F.3d 215, 229 (2d Cir. 2006), as amended (Oct. 3, 2006), where they are a "natural offshoot" of the "basic scheme" already alleged, In re Chaus Sec. Litig., 801 F. Supp. 1257, 1264 (S.D.N.Y. 1992) (citation omitted), or where they present "just another component of the scheme alleged initially."  In re Am. Int'l Grp., Inc. Sec. Litig., 916 F. Supp.

---

[4]      Plaintiffs "do not allege that the share-based payments were themselves improper or fraudulent."  (SAC ¶ 64.)

2d 454, 461 (S.D.N.Y. 2013).  "[E]ven where an amended complaint tracks the legal theory of

the first complaint," however, "claims that are based on an entirely distinct set of factual

allegations will not relate back."  <u>Caldwell v. Berlind</u>, 543 F. App'x 37, 40 (2d Cir. 2013)

(quoting <u>Slayton</u>, 460 F.3d at 228).  "The 'central inquiry' under Rule 15(c)(2) 'is whether

adequate notice of the matters raised in the amended pleading has been given to the opposing

party within the statute of limitations by the general fact situation alleged in the original

pleading.'"  <u>In re Alcatel Sec. Litig.</u>, 382 F. Supp. 2d 513, 528 (S.D.N.Y. 2005) (quoting

<u>Stevelman v. Alias Research, Inc.</u>, 174 F.3d 79, 86 (2d Cir. 1999)).

     Plaintiffs contend that their Tonglu-based claims arise from the same conduct,

transaction, or occurrence, as their prior claims because both challenge as misleading "the

strength of ZTO's margins and earnings—the very same issues addressed in the AC."

(Plaintiffs' Reply Memo. at 2-5.)  However, as Plaintiffs acknowledge, the facts concerning

ZTO's alleged payments to Tonglu are independent of those underlying Plaintiffs' prior claims.

(<u>See</u> SAC ¶ 55 ("The financials reported in ZTO's Registration Statement were also misleading

for a second, independent reason.").)  Proof of Plaintiffs' Tonglu-related claims would require

different evidence—concerning ZTO's relationship with Tonglu, among other things—than

would their prior claims.  <u>Cf.</u> <u>Benfield v. Mocatta Metals Corp.</u>, 26 F.3d 19, 23 (2d Cir. 1994)

("To a large extent, proof of Kinzinger's RICO cause of action would require evidence of the

same or similar wrongful acts and the testimony of the same or similar witnesses as would proof

of Mocatta's alleged Commodity Exchange Act violations.")   Moreover, Plaintiffs' prior

pleadings, which did not mention either Tonglu specifically or the concept of improper share-

based payments generally, did not place Defendants on sufficient notice of Plaintiffs' Tonglu-

based claims for those claims to relate back to Plaintiffs' prior pleadings.  The Court therefore

concludes that Plaintiffs' Tonglu-based claims do not arise from the same conduct, transaction, or occurrence as their prior claims, and do not relate back under Federal Rule of Civil Procedure 15(c)(2).  See In re Noah Educ. Holdings, Ltd. Sec. Litig., No. 08-CV-9203 (RJS), 2010 WL 1372709, at *9 (S.D.N.Y. Mar. 31, 2010) ("[I]t cannot be said that the Consolidated Complaint's new allegation—that Noah failed to disclose the warning label issue—adds more factual detail or clarification to the claims in the original complaints or alleges similar or related misconduct.").

Furthermore, even if the Tonglu-based claims were timely, they would fail to state a claim upon which relief may be granted, principally because they are premised on a misreading of ZTO's Offering Documents.  The SAC details ZTO's alleged scheme with Tonglu as follows:

> [ ] ZTO used its significant control of close relationship with Tonglu to inflate ZTO' s financial picture.  In 1Q16, ZTO made share-based payments to Tonglu—i.e., payments of shares of ZTO ADS—of 38.6 million Renminbi.  In 2Q16, ZTO made share-based payments to Tonglu of 83.4 million Renminbi [for a total of 122 million Renminbi in 1H16]. While the Registration Statement disclosed generally the fact that ZTO made share-based payments, it did not disclose that such payments were made to Tonglu, nor that such payments were not ZTO's normal way of paying Tonglu for its services.  Moreover, the Registration Statement failed to disclose that, unusually, those ADS payments vested immediately.  It is thus reasonable to conclude that the purpose of the share-based payments to Tonglu was to convert what is normally a cash cost of revenue—payment for the line-haul trucking services Tonglu provided ZTO—into a non-cash operating expense in order to present a rosier version of the Company's financials in advance of the IPO.

> The decline in cash payments to Tonglu, driven in substantial part by the replacement of cash payments with immediately vesting shares of ZTO ADS, allowed ZTO to report better profits and margins than it would have if the equivalent amounts were paid to Tonglu in cash. According to the Registration Statement, payments to Tonglu **decreased** dramatically, from 703.1 million Renminbi ($105.8 million USD) in 1H15 to 418.0 million Renminbi ($62.9 million USD) in 1H16, despite the fact that ZTO's parcel volume **increased** just as dramatically, from 1.18 billion to 1.91 billion, during the same period. . . .

> Because the 1Q16 and 2Q16 immediately vesting share-based payments to Tonglu were not standard practice, and because they had an effect on the

calculation of ZTO's profits and gross margins, ZTO's omission of these share-based payments rendered the financial information disclosed in the Registration Statement materially misleading to investors.

(SAC ¶¶ 57-60 (bold text in original).)

Contrary to Plaintiffs' reading, however, ZTO's Registration Statement does not report that cash payments to Tonglu decreased from 703.1 million Renminbi in 1H15 to 418.0 million Renminbi in 1H16; it states that ZTO made 703.1 million Renminbi in cash payments to Tonglu in all of 2015, and 418.0 million Renminbi in the first half of 2016. (Reg. Stmt. at 20 ("In 2014, 2015 and the six months ended June 30, 2016, we incurred RMB643.6 million, RMB703.1 million (US$105.8 million) and RMB418.0 million (US$62.9 million), respectively, of transportation service fees to Tonglu Tongze and its subsidiaries") (emphasis added); id. at 155 (same).)[5]  Indeed, the Registration Statement reflects that ZTO's payments to Tonglu increased from approximately 320 million Renminbi in 1H15 to 418 million Renminbi in 1H16. (Reg. Stmt. at F-71.)  In the face of this increase, Plaintiffs' "key" allegation that ZTO underreported its expenses in the first half of 2016 by paying Tonglu in shares rather than in "standard payments of cash" is not plausible.  (See Plaintiffs' Reply Memo. at 10 ("Key to the allegations is that 1H16 payments to Tonglu in shares of ZTO, rather than standard payments in cash, had the effect of reducing the expenses in ZTO's margins.").)

Moreover, the Offering Documents disclosed ZTO's 1H16 share-based compensation expenses in the amount of 122 million Renminbi (which it reported were made to certain ZTO employees, rather than Tonglu), treating them as selling, general, and administrative

---

[5]    Plaintiffs do not attempt to defend their reading of the Registration Statement on reply. "The Court is not required to accept factual allegations that are demonstrably false." Werner v. Selene Fin., LLC, No. 17-CV-06514 (NSR), 2019 WL 1316465, at *2 n.6 (S.D.N.Y. Mar. 22, 2019).

expenses.  (Reg. Stmt. at 77.)  In light of ZTO's <u>increased</u> cash payments to Tonglu in 1H16, and ZTO's actual disclosure of the challenged 122 million Renminbi share-based expenses in its Offering Documents, Plaintiffs cannot plausibly claim that "ZTO's omission of these share-based payments rendered the financial information disclosed in the Registration Statement materially misleading to investors."  (SAC ¶ 60.)  Therefore, even if Plaintiffs' Tonglu-based claims were timely, the Court would deny as futile Plaintiffs' motion for leave to amend to assert them.[6]

<u>Claims Based on ZTO's Alleged April 2016 Network Transit Fee Decrease</u>

Plaintiffs also seek leave to replead their claims based on the omission of ZTO's April 2016 network transit fee decrease from its Offering Documents.  The Court has carefully considered Plaintiffs' new allegations in support of those claims, and concludes that they fail to cure the deficiencies identified in the July 17 Opinion.

First, the SAC fails to allege plausibly that ZTO's statements concerning its "high operating margins" (SAC ¶¶ 44-45) were rendered materially misleading by ZTO's omission of the alleged April 2016 fee decrease.  Though Plaintiffs now specifically allege that "[n]etwork transit fees comprised more than 90% of ZTO's revenue from express delivery services (which themselves comprised more than 90% of ZTO's total revenue)" (<u>id.</u> ¶ 47), the SAC still "contains no allegations from which the Court can discern the magnitude of the fee decrease or its effect on ZTO's profitability."  (July 17 Opinion at 9.)  As the Court previously held, CEO Lai's statement that ZTO's 1Q17 financials were "not directly comparable" to those from 1Q16

---

[6]     Because the Court concludes that Plaintiffs' Tonglu-based claims are barred by the statute of limitations, and are premised on a plain misreading of ZTO's Registration Statement, the Court does not reach Defendants' alternative arguments for why those claims fail to state a plausible claim for relief.  (<u>See</u> Defendants' Memo. at 9-16.)

in light of the fee decease is insufficient "to support a plausible inference that the magnitude of the decrease itself was substantial."  (Id. at 9-10.)  So too is Plaintiffs' allegation that ZTO's gross margin declined from 30.7% in 1Q16 to 27.9% in 1Q17 (SAC ¶¶ 87, 89, 92, 93), "mainly due to "the impact of the downward adjustment in service charge in Q2 2016 and the increase of line-haul transportation cost" (id. ¶ 93 (emphasis added); see also Plaintiffs' Memo. at 9-11), in light of Plaintiffs' other allegations that (1) ZTO's revenue per parcel "**increased (not decreased)** from 2Q15 to 2Q16" (Plaintiffs' Memo. at 10 (bold text in original)), notwithstanding the alleged fee increase in April,[7] and (2) ZTO's net profit, net margin, gross profit, and gross margin either increased or remained the same from 1Q16 to 2Q16, and again from 2Q16 to 3Q16.  (SAC ¶¶ 91-92.)[8]

---

[7]    Plaintiffs add this allegation in part in response to the Court's statement in the July 17 Opinion that "the effect of the fee decrease was disclosed to investors, who could simply divide ZTO's reported quarterly revenues by parcel volume to determine the reduction in transit fee revenue per package in the second quarter of 2016."  (July 17 Opinion at 10.) According to Plaintiffs, "even assuming the calculation of quarterly revenue per parcel was an informative proxy for network transit fee, the resulting calculation would not have informed investors that ZTO reduced the fee in April 2016," because "[t]he year-over-year comparison in revenue per parcel shows that revenue per parcel **increased (not decreased)** from 2Q15 to 2Q16."  (Plaintiffs' Memo. at 10.)  That increase only serves to undermine Plaintiffs' allegation that the undisclosed network transit fee decrease in April 2016 had a materially negative impact on ZTO's financial performance.

[8]    Plaintiffs also allege that IPO analysts at Credit Suisse stated that they expected "income from transit service fees" to remain "largely stable," and that analysts at J.P. Morgan focused on ZTO's "pricing power over . . . the network transit fees."  (SAC ¶¶ 78, 81; see also Plaintiffs' Memo. at 12.)  Setting aside Defendants' argument that these statements are taken out of context (see Defendants' Memo at 21, 22 n.7), the SAC fails to allege the magnitude of the alleged fee decrease (and therefore provides no factual support for the proposition that the fees did not remain "largely stable").  Similarly, the SAC fails to allege facts showing that ZTO's disclosure of the risk that ZTO might not be able to "adjust the level of network transit fees based on operating costs and market conditions" (SAC ¶ 68) was insufficient to alert investors of any limits of ZTO's purported "pricing power."

Second, the SAC fails to allege plausibly that Defendants' statement that network transit fees were ZTO's "principal" source of revenues was rendered materially misleading by the omission of the alleged fee decrease from its Offering Documents.  (SAC ¶ 65.)  Plaintiffs still concede that the statement was true (id. ¶ 66), and the SAC still contains "no facts from which the Court can infer that the fee decrease had any effect, let alone a material effect, on the composition of ZTO's revenues such that network transit fees were no longer the 'principal' source of ZTO's revenues after April 2016."  (July 17 Opinion at 8.)

Third, the SAC fails to allege plausibly that Defendants' risk disclosure—that "[i]f we are not able to effectively control our cost and adjust the level of network transit fees based on operating costs and market conditions, our profitability and cash flow may be adversely affected" (SAC ¶ 68)—was rendered materially misleading by the omission of the April 2016 fee decrease.  As explained in the July 17 Opinion (at 10-11), Plaintiffs' failure to allege the materiality of the fee decrease is also fatal to their claim that Defendants' risk disclosure was materially misleading on account of ZTO's omission of that fee decrease from its Offering Documents.

In any event, the Court is not convinced that the SAC's allegations suffice to state a claim that investors were "materially misled by the purported warning about events that had already occurred."  (Plaintiffs' Reply Memo. at 14-15.)  On reply, Plaintiffs rely on Berson v. Applied Signal Tech., Inc., 527 F.3d 982 (9th Cir. 2008), for the proposition that a general warning that a certain risk might occur is insufficient to warn investors that the risk had already in fact materialized.  In Berson, the Ninth Circuit held that plaintiffs stated a claim that they had been misled by general warnings of "as-yet-unrealized risks" that a company's customers might modify or cancel existing contracts in the company's backlog, where those customers had

already submitted "stop-work" orders halting tens of millions of dollars-worth of the company's work.  <u>Id.</u> at 984-87 ("The passage, moreover, speaks entirely of as-yet-unrealized risks and contingencies.  Nothing alerts the reader that some of these risks may already have come to fruition, and that what the company refers to as backlog includes work that is substantially delayed and at serious risk of being cancelled altogether.").

   This case, however, is more akin to <u>Williams v. Globus Med., Inc.</u>, 869 F.3d 235 (3d Cir. 2017).  In <u>Williams</u>, the Third Circuit Court of Appeals agreed that "a company may be liable" in some circumstances "for misleading investors when it describes as hypothetical a risk that has already come to fruition."  <u>Id.</u> at 241.  <u>Accord</u> <u>Chapman v. Mueller Water Prod., Inc.</u>, No. 19-CV-3260 (LJL), 2020 WL 3100243, at *15 (S.D.N.Y. June 11, 2020) ("Some courts in this Circuit have held that a risk disclosure can itself constitute a material misrepresentation when it presents as a risk an event that has already transpired.").  However, after distinguishing <u>Berson</u>, the <u>Williams</u> court held that that a medical device company's general warning—that "if any of our independent distributors were to cease to do business with us, our sales could be adversely affected"—was not misleading even though the company had in fact already terminated its relationship with one such independent distributor, where, at the time of the disclosure, the company's sales had not been adversely affected by that termination.  <u>Williams</u>, 869 F.3d at 241-43.  The same type of situation is framed by Plaintiffs' allegations here.  ZTO warned: "If we are not able to effectively control our cost and adjust the level of network transit fees based on operating costs and market conditions, our profitability and cash flow may be adversely affected."  (SAC ¶ 68.)  According to Plaintiffs, even though those fees decreased by an unspecified amount in April 2016, ZTO's profitability and cash flow improved in 2Q16 and again in 3Q16, immediately before the IPO.  (<u>Id.</u> ¶¶ 91-92.)  "Accordingly, this case is unlike the

materialization of risk cases cited by plaintiffs, in which the adverse effects at issue had in fact been realized."  Williams, 869 F.3d at 243.  See also Hou Liu v. Intercept Pharm., Inc., No. 17-CV-7371 (LAK), 2020 WL 1489831, at *12 (S.D.N.Y. Mar. 26, 2020) ("The statement that the use of Ocaliva 'may result in side effects, adverse reactions or misuse' was made in the context that these events were ones that could affect Intercept's income.  If, when the statements were made, any misuse or adverse events had affected Intercept's earnings negatively, then the statement would have been misleading.  But there are no such allegations.").

For those reasons, as well as those set forth in the Court's July 17 Opinion and in Defendants' opposition brief (Defendants' Memo. at 16-25), the Court concludes that the SAC fails to remedy the deficiencies identified in the July 17 Opinion as to Plaintiffs' claims arising out of the omission of ZTO's network transit fee decrease from its Offering Documents, and denies as futile Plaintiffs' motion for leave to amend to replead those claims.[9]

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for leave to amend is denied in its entirety and the case is dismissed.  The Clerk of Court is respectfully directed to enter judgment and close the case.

This Memorandum Opinion and Order resolves docket entry no. 89.

SO ORDERED.

Dated: New York, New York
       March 31, 2021

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge

---

[9]     For the reasons set forth above and in the Court's July 17 Opinion, the Court also denies Plaintiffs' motion for leave to amend to the extent Plaintiffs seek to assert clams based on the fee decrease omission under Item 303 or Item 503 of SEC Regulation S-K, or Sections 12 and 15 of the Securities Act.  (See July 17 Opinion at 13-16.)